## Lehigh Valley Dodge, Inc. v. State Farm Mutual Automobile Insurance Company

*Alan M. Black*, for plaintiff.

*Donald H. Lipson*, for defendant.

SCHEIRER, J., October 19, 1970.—In this action in assumpsit following the filing of a complaint, an answer containing new matter and a reply, defendant has moved for judgment on the pleadings.

The admitted facts are: On or about May 5, 1968, defendant issued a policy of automobile insurance to Thomas M. Gray and Kathleen A. Gray, which policy of insurance was in full force and effect on April 25, 1969. On that day, at approximately 3 a.m., the said Thomas M. Gray was operating a certain automobile owned by plaintiff, with plaintiff's consent, in a westerly direction along Interstate Route 78 near Easton, Pa. At the said time and place, plaintiff's automobile collided with a tractor trailer and was totally demolished. The alleged fair market value of the automobile is $3,662.70.

Plaintiff was, at all times material to this cause of action, engaged in the general automobile business and Thomas M. Gray was on plaintiff's payroll at the time of the accident.

The subject insurance policy attached to plaintiff's complaint provides extended coverage to nonowned automobiles operated by the insured with the permission of the owner or person in lawful possession of such automobile. However, such nonowned automobile is specifically excluded from coverage:

". . . (1) while maintained or used by any person while such person is employed or otherwise engaged in an automobile business of the insured or of any other person or organization, . . ."

The policy defines the term automobile business as follows:

"means the business or occupation of selling, leasing, repairing, servicing, storing or parking of automobiles."

Briefly stated, defendant's position is that liability does not rest upon it, because Gray was "employed or otherwise engaged in an automotive business of the insured or of 'some' other person or organization." Plaintiff contends that the exclusionary clause should not apply unless it is shown that the nonowner was actually engaged in the automobile business; it should not apply when he is acting outside of the scope of the business. In a real sense, defendant's position is that it is enough that the nonowner is on the payroll of the owner of the automobile business.

Our colleague, Judge Donald E. Wieand, in Knauss v. Gaines, 33 Lehigh 415, was confronted with a similar situation involving an amendment to the Workmen's Compensation Act effected by the Act of August 24, 1963, P. L. 1175, sec. 1, 77 PS §72, providing: "If disability or death is compensable under this act, a person shall not be liable to anyone at common law or oth-

erwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong."

Judge Wieand stated the issue as follows:

"The defendants contend that the words 'while in the same employ as the person disabled' must be given a construction which is both general and broad. The interpretation which they advance would have the effect of relieving an employe from common law liability for negligent acts resulting in injury to a fellow employee, whether committed in the course of employment or not, provided only that the injured person is entitled to receive benefits under the Workmen's Compensation Act. The plaintiffs argue that the words 'while in the same employ' must be given a narrow or restricted meaning. They contend that a fellow employee is immune from common law liability for negligence only if the act causing harm to another employee is committed while the actor is in the course of his employment."

After reviewing cases defining the master-servant relationship, the court commented:

"To the understanding of the average workman, the employer-employee relationship clearly does not exist twenty-four hours a day and seven days a week. A servant, in common parlance, is in the 'employ' of his master only while he is working for the master and subject to his right of control. In a legal sense, a servant contracts to work for the master within a defined field of action. It is that field of action which constitutes the subject matter of his employment. When it is exceeded, the relationship of master and servant ceases to exist. When the servant acts outside that field of action and apart from the subject matter of his employment, he is no longer in the 'employ' of the master."

Defendant's motion for summary judgment was denied and it was held that the immunity from common-law liability granted by the 1963 amendment extended only to employes who were acting in the course of their employment at the time of the negligent act which resulted in injuries to a fellow employe.

We are convinced from a perusal of cases and texts that the use at the time of the accident is the key to the applicability of the exclusionary clause. "It is the use of the insured vehicle at the time of the accident which determines the applicability of the 'commercial use' exclusionary clause in a liability policy . . ." 13 Couch on Insurance 2d §45:968.

". . . , an exception of liability with respect to the employee of a sales agency is not operative unless such sales agency employee is at the time of the accident acting within the scope of his employment . . ." §45:978.

"For an exception to be operative which is drawn in terms of a garage business or the act of an employee thereof, it is necessary that the employee be acting within the scope of his employment by the garage at the time of the accident. Conversely stated, where the employee is acting outside the scope of his employment there is in the eyes of the law no act of an employee of a garage, the exception is not operative, and coverage, if otherwise existing, is not affected": §45:990.

In Libero v. Lumbermens Mutual Casualty Co., 141 Conn. 574, 108 A. 2d 533, 47 A.L.R. 2d 550, the exclusionary clause "with respect to any person or organization other than the named insured" did not apply "to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof." The court stated

that this clause must "be interpreted to apply to the employees of persons operating an automobile repair shop or public garage *only when they are acting within the scope of their employment.*" Also see McConnell v. Travelers Indemnity Company, 248 La. 509, 180 So. 2d 406; Commercial Standard Insurance Company v. Sanders, 326 S. W. 2d 298 (Tex. Civ. App.); McCree v. Jenning, 55 Wash. 2d 725, 349 P. 2d 1071. (Italics supplied.)

While the terminology in exclusionary clauses may vary, we are certain that the use of the vehicle or the nature of the non-owner's activity at the time of the accident must be the criterion as to their applicability. If it were not so, then the policy should merely be phrased in such terms as "such non-owned automobile is specifically excluded from coverage while in the custody or possession of any employee of an automobile business." But the terminology here is "while such person is employed or otherwise engaged in an automobile business." The term "employed" involves the employer-employe relationship, i.e., the master-servant relationship. This relationship must exist at the time of the accident. The analogy, therefore, of the reasoning expressed in Knauss v. Gaines, supra, is helpful and persuasive.

We concur in plaintiff's analysis of the reason for the exclusionary clause as expressed in his brief:

"Persons in the automobile business, while actually engaged in that business, operate motor vehicles with a greater frequency and under different circumstances than the average person. It is reasonable to assume that this is a special risk which the defendant wished to exclude through the policy exclusion in question. However, when such a person is not actually engaged in the automobile business, for example when he is acting outside the scope of his employment, there is no

special risk and there would be no reason for the exclusion to apply."

If there be ambiguity in the language of the policy, it should be construed against the insurance company.

In Bechler v. Oliva, 400 Pa. 299, 161 A. 2d 156, it was held that whether an accident arose out of the operation of an automobile repair shop, a question arising out of an exclusionary clause, was for a jury's determination.

Defendant's motion for judgment on the pleadings will be denied.

### ORDER

Now, October 19, 1970, defendant's motion for judgment on the pleadings is denied.